24CA0139 Peo v Shaw 02-06-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0139
City and County of Denver District Court No. 20CR5699
Honorable Alex C. Myers, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jessie Clay Shaw,

Defendant-Appellant.

ORDER AFFIRMED

Division V
Opinion by JUDGE SULLIVAN
Freyre and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 6, 2025

Philip J. Weiser, Attorney General, Joshua J. Luna, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Cynthia A. Harvey, Alternate Defense Counsel, Aurora, Colorado, for Defendant-Appellant

¶ 1    Defendant, Jessie Clay Shaw, appeals the postconviction court's order denying his Crim. P. 35(b) motion for reconsideration of his sentence.  We affirm.

## I.    Background

¶ 2    The People charged Shaw with eleven counts: one count of first degree kidnapping, one count of second degree kidnapping, three counts of sexual assault, one count of second degree assault, and five crime of violence sentence enhancers.  The charges stemmed from allegations that Shaw threatened the victim with a knife at a cemetery; forced the victim to perform oral sex on him while driving around the cemetery; drove the victim to a hotel where he forced the victim to record a statement saying she consented to the sex acts that she was about to perform; and then recorded the victim engaging in oral and vaginal sex with him.

¶ 3    The parties proceeded to trial, but after two hung juries, the parties agreed to a plea deal.  In exchange for Shaw pleading guilty to an added count twelve — first degree assault with a deadly weapon — and serving a stipulated prison sentence of twenty-five years, the People agreed to dismiss the remaining eleven counts. The court accepted the parties' plea agreement and sentenced Shaw

to twenty-five years in the custody of the Department of Corrections (DOC). Shaw later filed a Crim. P. 35(b) motion for sentence reconsideration, which the court denied.

¶ 4 Shaw's sole contention on appeal is that the court erroneously concluded that it couldn't reconsider Shaw's sentence under Crim. P. 35(b) because he was sentenced as part of a plea agreement that included a stipulated sentence. We disagree with this argument.

## II. Applicable Law and Standard of Review

¶ 5 Crim. P. 35(b) permits the postconviction court an opportunity to reconsider the sentence previously imposed. *People v. Olivas*, 911 P.2d 675, 677 (Colo. App. 1995). In ruling on a Crim. P. 35(b) motion, the court must "consider all relevant and material facts, including both new evidence and evidence known at the time the sentence was imposed." *Olivas*, 911 P.2d at 677. A court isn't required to make findings of fact when ruling on a Crim. P. 35(b) motion, but it should "provide a statement of the basic reasons in support of its ruling." *Id.*; *accord People v. Dunlap*, 36 P.3d 778, 782 (Colo. 2001).

¶ 6    We won't disturb the court's ruling on a Crim. P. 35(b) motion absent an abuse of discretion. *See Dunlap*, 36 P.3d at 780. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or based on a misunderstanding or misapplication of the law. *People v. Miller*, 2024 COA 66, ¶ 40.

### III.    Analysis

¶ 7    In its written order denying Shaw's Crim. P. 35(b) motion, the court first laid out the correct governing legal standard from *Dunlap* and the rule itself. The court then said that it had "reviewed the motion, the Court file, and all relevant and material facts" and that the "sentence in this case was stipulated as part of Shaw's plea agreement, which the Court accepted after consideration of the facts and circumstances of this case and Shaw's conviction for first degree assault with a deadly weapon." As a result, the court "decline[d] to reconsider the sentence" and denied Shaw's motion.

¶ 8    We perceive no abuse of discretion in the court's decision denying Shaw's request for reconsideration of his sentence. By saying that it had reviewed the motion, court file, and "all" relevant and material facts and that it nonetheless concluded that its original sentence remained appropriate, the court provided its basic

reasons for denying Shaw's motion. *See, e.g., People v. Barnett*, 2020 COA 167, ¶ 33 (affirming order denying defendant's Crim. P. 35(b) motion where the postconviction court "noted that it had reviewed the motion, concluding that 'the court is well familiar with this case and finds that the original sentence imposed is appropriate to the circumstances of this case'"); *Olivas*, 911 P.2d at 677-78 (affirming order denying defendant's Crim. P. 35(b) motion where the postconviction court "noted the matters it considered prior to the denial of the defendant's motion," including "the file, the motion, and the presentence report"). "We will neither fault the court for its short order nor construe such brevity as a failure to exercise discretion in its denial of [Shaw's] Crim. P. 35(b) motion." *Barnett*, ¶ 36.

¶ 9 Contrary to Shaw's argument, the court didn't say that it was denying his motion based on its belief that it lacked the discretionary authority to reduce his sentence under the plea agreement's terms. Rather, the court in its order simply recounted the background of the case — including the parties' plea agreement — that led it to impose its original twenty-five-year prison sentence. Had the court believed that the plea agreement precluded it from

reducing Shaw's sentence, it would have said so expressly and wouldn't have bothered explaining that it took the time to review the court file and "all relevant and material facts."

¶ 10 Moreover, the court's reference in its denial order to "Mr. Shaw's plea agreement" and its stipulated sentence makes sense when considered in the context of the case as a whole and the role that the agreement played in the sentence that Shaw received. As to context, the postconviction court that denied Shaw's Crim. P. 35(b) motion was the same court that accepted his plea and presided over his sentencing, giving it familiarity with the circumstances of Shaw's case. The court remarked at sentencing, for example, that Shaw was "fortunate" to be receiving a twenty-five-year prison sentence given the seriousness of the underlying allegations:

> [H]aving heard the evidence, having a general understanding of what unfolded even if there were some disputed nuances, you know 25 years is a – you're fortunate. This could have been a lot worse and I think a jury – a different jury could have certainly concluded that you were responsible for much more and so you know I do really hope that you take the time in DOC to better yourself, to consider what's transpired here and so that when you are released and you will be released with a lot of

> time left in your life to – that you do so in a way that you're able to enter the community and stay safe and be a productive member in the community.

¶ 11 The court alluded to this relatively favorable sentence in its order denying Shaw's Crim. P. 35(b) motion, noting that Shaw received this sentence under the terms of the plea agreement despite his crime involving the use of a deadly weapon. But at no point did the court suggest that it was bound to accept the plea agreement's stipulated sentence. To the contrary, the court accepted the twenty-five-year sentence only "after consideration of the facts and circumstances of this case."

¶ 12 Accordingly, the court didn't abuse its discretion by denying Shaw's Crim. P. 35(b) motion.

## IV. Disposition

¶ 13 We affirm the order.

JUDGE FREYRE and JUDGE SCHOCK concur.

6